IN THE CIRCUIT COURT OF THE 18TH JUDICIAL CIRCUIT IN AND FOR BREVARD COUNTY, FLORIDA

NARP-ALTAI-AVIA, LTD., a foreign limited liability company,

CASE NO.: 6:00-CV-970-ORL-18B

          Plaintiff,

JUDGE

v.

VERTOL SYSTEMS COMPANY, INC., an Oregon corporation, and JAMES MONTGOMERIE, an individual,

          Defendants.

_____/

## VERIFIED COMPLAINT

Plaintiff, NARP-Altai-Avia, Ltd. ("NARP"), by and through undersigned counsel, hereby sues Defendants, Vertol Systems Company, Inc. ("Vertol"), and James Montgomerie ("Montgomerie") and alleges:

### Parties and Venue

1.     This is an action for damages in excess of $15,000.00, exclusive of interest, costs, and attorneys' fees.

2.     Plaintiff NARP is a foreign limited liability company with its principal place of business in Novosibirsk, Russia. NARP is engaged in the business of building, repairing, and selling helicopters.

3.     Defendant Vertol is an Oregon corporation operating, conducting, engaging and carrying on a business or business venture in Melborne, Florida.

4.     Defendant James Montgomerie is a resident of Portland, Oregon, and is the President and Secretary of Vertol.

5.      Jurisdiction and venue are proper in Brevard County because the cause of action and wrongful acts which give rise to Plaintiff's claims occurred in Brevard County and because the property which forms the basis for certain of Plaintiff's claims is located in Brevard County.

## General Allegations

6.      On or about March 9, 1999, NARP entered into Contract No. 1-BA/9-99-IIB, On Sale of Helicopter Mi-8MTV-1 (the "Contract") with Vertol for the purchase and sale of a civilian transport helicopter, Model Mi8MTV-1, serial no. 96138 ("the Helicopter") manufactured in Russia. True and correct copies of pictures of the Helicopter are attached hereto as Composite Exhibit "A." A true and correct copy of the contract is attached hereto as "Exhibit B."

7.      The Contract was subsequently amended by eight Additional Agreements, which were executed on the following dates:

      a.      Additional Agreement No. 1-BA/9/99-IIC, Dated September 4, 1999;

      b.      Additional Agreement No. 2-BA/9-99-IIB-IIC, Dated September 22, 1999;

      c.      Additional Agreement No. 3-BA/9-99-IIB-IIC, Dated September 25, 1999;

      d.      Additional Agreement No. 3-BA/9-99-IIB-IIC, Dated September 24, 1999;

      e.      Additional Agreement No. 4-BA/9-99-IIB-IIC, Dated September 25, 1999;

      f.      Additional Agreement No. 3/1-BA/9-99-IIB-IIC, Dated October 6, 1999; and

      g.      Additional Agreement No. 4-BA/9-99-IIB-IIC, Dated October 14, 1999.

True and correct copies of the eight Additional Agreements are attached hereto as composite Exhibit "C."

8.      Pursuant to Section Three of the Contract, the purchase price of the Helicopter was Eight Hundred Twenty Five Thousand Dollars ($825,000.00).  Vertol has paid to date the sum of

Four Hundred Twenty Five Thousand Dollars ($425,000.00) leaving an unpaid balance of Four Hundred Thousand Dollars ($400,000.00).

9.      Pursuant to Paragraph 9.4, as amended by Additional Agreement No. 4 (September 25, 1999) to the Contract, Vertol was to "transfer to the Seller's account, within 3 days from the date of the beginning of reassembling work by the Seller's specialists, the remaining balance of Four Hundred Thousand United States Dollars ($400,000.00) as described in the contract, *but not later than within 60 days from the date of shipping the container from Novosibirsk.*" (emphasis added).

10.     Pursuant to Paragraph 5.1 of the Contract, the NARP remains the owner and title holder of the Helicopter until NARP has received from Vertol the full Contract price of $825,000.00.

11.     In Additional Agreement No. 4 (October 14, 1999) to the Contract, Vertol agreed to secure payment of the remaining $400,000.00 balance under Paragraph 9.4 by opening a letter of credit in favor of NARP on the following terms: "Within [fifteen] days from the date of loading the container on rail platform, the BUYER will open in the bank, specified by the SELLER, an irrevocable, indivisible Letter of Credit for the sum of [Four] Hundred Thousand ($400,000.00) United States Dollars."

12.     The only conditions specified in Additional Agreement No. 4 (October 14, 1999) for opening this letter of credit was the furnishing of two documents:  (a) a bill of lading for the Helicopter, and (b) "Acceptance Receipt" for the Helicopter signed by Vertol in the United States.

13.     Notwithstanding that NARP loaded the Helicopter on the rail platform in Novosibirsk for shipment to St. Petersburg, Russia on or about October 13, 1999, Vertol did not open the letter of credit on or before October 28, 1999 as required by Additional Agreement No. 4 (October 14,

1999). Instead, Vertol delayed nearly five months -- until March 20, 2000 -- to obtain a letter of credit.

14.     Moreover, the letter of credit eventually obtained by Vertol, Letter of Credit No. 723-01-0000185-S issued by First Security Bank (the "Letter of Credit") violated the Contract in several respects. Among other things, the Letter of Credit contained the following unilateral requirements about which NARP had not been consulted, and to which it did not consent:

        a.    An expiration date of June 30, 2000.

        b.    A requirement that, in order to "draw down" on the Letter of Credit, the payee (NARP) present to First Security Bank a "Certificate of Reassembly and Acceptance" issued by Vertol.

15.     On several occasions prior to the expiration of the Letter of Credit, NARP requested that Vertol contact First Security Bank to extend the expiration date for the Letter of Credit, in order to prevent loss of the security for Vertol's payment of the $400,000.00 due under the Contract. Vertol refused to extend the expiration date for the Letter of Credit.

16.     Notwithstanding that more than 60 days has transpired since the Helicopter was shipped to Vertol, and notwithstanding that Vertol has taken possession of the Helicopter, Vertol has not paid the $400,000.00 due and has refused to authorize such payment to NARP under the Letter of Credit.

17.     Under Paragraph 10.5 of the Contract, should Vertol delay with the transfer of currency to NARP, Vertol is obligated to pay a fine of 0 .1% of the cost of the Helicopter (i.e., $8,250.00) for every day of delay, but no more than 10% of the total cost of the Helicopter (i.e., $82,500.00).

4

18.     Upon information and belief, the Helicopter is currently located at Hangar 17 in the Atlantic Jet Center, 1383 General Aviation Drive, Melborne, Florida (the "Atlantic Jet Center").

19.     Paragraph 4.7 of the Contract provides that, within five days of arriving at the Helicopter's final destination, NARP's authorized mechanics will reassemble the Helicopter; make a test flight; and release the Helicopter to Vertol.

20.     NARP agreed, under Paragraph 13.2 of the Contract, to provide six specialists for reassembly and test flight of the Helicopter.

21.     Under Paragraph 13.1 of the Contract, Vertol "has no right to make any constructive changes" to the Helicopter without NARP's authorization.

22.     The Helicopter arrived in Melborne on or about May 15, 2000 and arrived at the Atlantic Jet Center on or about May 19, 2000.

23.     Notwithstanding repeated delays in scheduling the date of reassembly of the Helicopter due to Vertol's delays in obtaining the Letter of Credit needed to ship the Helicopter from Russia, notwithstanding that May 6-9, 2000 were business holidays at the U.S. Embassy in Moscow, and notwithstanding delays by the U.S. Embassy in issuing the required visas, NARP was able to secure the required visas for its reassembly team to travel to Melborne, and notified Vertol that the team could depart for Melborne on May 25, 2000 to reassemble the Helicopter.

24.     However, Vertol prevented NARP from carrying out the reassembly under Paragraphs 4.7 and 13.2 of the Contract by contracting with unauthorized third parties to reassemble the Helicopter in violation of Paragraph 13.1 of the Contract and over NARP's express objection. Vertol thereby performed substantial constructive changes to the Helicopter using personnel who have not been approved by NARP.

25.     Had Vertol complied with the Contract and allowed NARP's trained specialists to travel to Melborne and reassemble the Helicopter on the schedule proposed by NARP, the aircraft would have been fully reassembled and ready for test flight on or about June 12, 2000.

26.     While Vertol has asserted that the Helicopter arrived in a damaged condition, by its unilateral action of hiring unauthorized persons to unpack and reassemble the Helicopter, and preventing NARP from doing so, Vertol and its agents are fully responsible for any alleged damage. Moreover, under Paragraph 5.2 of the Contract, Vertol assumed risks of damage to the Helicopter after NARP transferred it to the sea carrier in St. Petersburg, Russia.

27.     Vertol is in the process of completing the unauthorized reassembly and performing test flights of the Helicopter.  See the Affidavit of Ed Bodigheimer.  On June 29, 2000, NARP demanded compliance with the Contract and Additional Agreements by letter dated June 29, 2000. A true and correct copy of the June 29, 2000 demand letter is attached hereto as **Exhibit "D."**

28.     NARP has performed all conditions precedent to bringing this action or such conditions have occurred or been waived.

29.     NARP has retained undersigned counsel to bring this action and has agreed to pay its reasonable attorneys' fees.

### Count I - Breach of Contract
### (Against Vertol)

30.     NARP hereby repeats and re-alleges each and every allegation contained in Paragraphs 1 through 29 as if fully set forth herein.

31.     By its actions and inactions, Vertol has breached the Contract and Additional Agreements.

6

32.     Specifically, by way of example and not limitation, Vertol has breached the
Contract and Additional Agreements as follows:

a.      Vertol failed, and has refused, to pay the $400,000.00 balance due on the
sale of the Helicopter, in violation of Paragraphs 3.3 and 9.4. of the Contract, as well as the
additional amounts for late payment in violation of Paragraph 10.5 of the Contract.

b.      Vertol failed, and has refused,  to pay the balance within 60 days of
October 13, 1999, in violation of Additional Agreement No. 4 (September 25, 1999).

c.      Vertol failed to obtain the Letter of Credit in the time specified by
Additional Agreement No. 4 (October 14, 1999).

d.      Vertol inserted two improper terms of presentment into the Letter of
Credit, in violation of Additional Agreement No. 4 (October 14, 1999).

e.      Vertol failed, and has refused, to either extend the improper expiration
date contained in the Letter of Credit, or to waive the improper presentment requirement of a
"Certificate of Reassembly and Acceptance," in violation of Additional Agreement No. 4
(October 14, 1999).

f.      Vertol performed unauthorized reassembly work on the Helicopter,
constituting "material change" to the Helicopter, despite NARP's objection and repeated
warnings that such reassembly might compromise the Russian-built aircraft's safety, in violation
of Paragraph 13.1 of the Contract.

g.      By unilaterally engaging in the unauthorized reassembly of the Helicopter
- despite NARP's objections and its repeated statements to Vertol that it was ready, willing and
able to send its authorized technicians to Melbourne to conduct a proper reassembly - Vertol

breached and/or waived all provisions of the Contract regarding reassembly and test flight of the Helicopter, including those set forth in Paragraph 4.7.

33.    As a direct result of Vertol's breach of the Contract and Additional Agreements, NARP has been damaged in an amount to be proven at trial, but not less than $482,500.00.

WHEREFORE, Plaintiff, respectfully requests that the Court enter judgment against Defendant, Vertol Systems Company, Inc for compensatory damages together with taxable costs, pre and post judgment interest, reasonable attorney's fees pursuant to F.S. §57.105 or other applicable law, and any other damages deemed just and proper.

## Count II - Common Law Fraud
### (Against Vertol and Montgomerie)

34.    NARP hereby repeats and re-alleges each and every allegation contained in Paragraphs 1 through 29 and 31 through 33 as if fully set forth herein.

35.    By inserting into the Letter of Credit the requirement that a "Certificate of Reassembly and Acceptance" be presented in order to draw down on the Letter of Credit, by adding a date of expiration of June 30, 2000, and by misrepresenting to NARP that these unilaterally-inserted provisions could not be removed from the Letter of Credit, both Vertol and Montgomerie committed fraud, as follows:

a.    Vertol and Montgomerie made material misrepresentations to NARP by agreeing, pursuant to Additional Agreement No. 4 (October 14, 1999), to have a Letter of Credit issued in NARP's favor at a bank specified by NARP with no draw down restrictions, and no expiration date.

b.    Vertol and Montgomerie made such material misrepresentations with the intention that NARP rely upon them.

c.    NARP relied upon these misrepresentations in signing Additional Agreement No. 4 (October 14, 1999) and in shipping the Helicopter to Vertol.

d.    As a result of reliance upon the material misrepresentations of Vertol and Montgomerie, NARP has been injured in that it could not draw down upon the Letter of Credit; First Security refused to honor the Letter of Credit prior to its expiration; Vertol and Montgomerie refused to extend the expiration date of the Letter of Credit, despite repeated requests to do so by NARP; and NARP has not received either the $400,000.00 balance for its sale of the Helicopter or the $82,500.00 penalty for late payment under the Contract.

36.    As a direct result of the fraud committed by Vertol and Montgomerie, NARP has been injured in amount to be proven at trial, but not less than $482,500.00.

WHEREFORE, Plaintiff, respectfully requests that the Court enter judgment against Defendants, Vertol Systems Company, Inc. and James Montgomerie, for punitive damages for fraud, together with taxable costs, pre and post judgment interest, reasonable attorneys' fees, and any other damages deemed just and proper.

### Count III - Civil Theft - F.S. §772.11
### (Against Vertol and Montgomerie)

37.    NARP hereby repeats and re-alleges each and every allegation contained in Paragraphs 1 through 29 and 31 through 33 and 35 through 36 as if fully set forth herein.

38.    Pursuant to FSA §772.111, a plaintiff may recover damages for civil theft by proving, with clear and convincing evidence, that a defendant has violated any of the sections of FSA §§812.012 through 812.037.

39.    As is evidenced in the Contract and the Additional Agreements, and as is set forth in the Common Facts section above, the Helicopter is the rightful property of NARP, and NARP

9

rightfully retains title in the Helicopter until Vertol has paid NARP the $482,500.00 owed under the Contract.

40.    Under F.S. §812.014(1), a person commits theft first degree if she "knowingly obtains or uses, or endeavors to obtain or to use, the property of another with intent to, either temporarily or permanently:  (a) Deprive the other person of a right to the property of a benefit from the property, or (b) Appropriate the property to his or her own use or to the use of any person not entitled to the use of the property."

41.    Under F.S. §812.014(2)(a), a person commits grand theft in the first degree if the property stolen is valued at $100,000 or more.

42.    Through their refusal to either pay the Contract balance of $400,000.00, or to return the Helicopter to NARP, Vertol and NARP have committed grand theft in the first degree under F.S. §812.014, as they have knowingly obtained and used the property of NARP with the intent to deprive NARP of its right to the Helicopter, or a benefit ($400,000.00) from the Helicopter, and the value of the Helicopter ($825,000.00) exceeds $100,000.

43.    As a result of the theft committed by Vertol and Montgomerie, NARP has been injured in an amount to be determined at trial, but not less that $1,200,000.00 (three times the remaining balance on the Helicopter.)

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment against Defendants, Vertol Systems Company, Inc. and James Montgomerie, for treble damages for civil theft of $1,200,000, costs of this action, and attorneys' fees in accordance with F.S. §772.11, together post judgment interest and any other damages deemed just and proper.

10

### Count IV - Replevin

44.     NARP hereby repeats and re-alleges each and every allegation contained in Paragraphs 1 through 29 as if fully set forth herein.

45.     Pursuant to Paragraph 5.1 of the Contract, the Helicopter remains the property of NARP until it receives the full Contract amount of $825,000.00. NARP, therefore, remains the owner and title holder of the Helicopter pursuant to the Contract and Additional Agreements until the full purchase price has been paid.

46.     The Helicopter is currently located at Hanger 17 in the Atlantic Jet Center, 1383 General Aviation Drive, Melborne, Florida 30935.

47.     Despite NARP's demand, Vertol has refused to extend the letter of credit from which the balance of $400,000 would be paid to NARP.

48.     The Helicopter is not being held for a tax assessment or fine pursuant to law.

49.     The Helicopter is not being held under an execution or attachment against it.

50.     The contract price for the Helicopter is $825,000.00 and the outstanding amount of the debt in dispute (the amount owed under the Contract and Additional Agreements) is $400,000.00.

51.     The Helicopter is being wrongfully detained by Vertol in contravention of the Contract and the Additional Agreements and Plaintiff has failed to make payment as agreed.

52.     On information and belief, Vertol is engaging in conduct, or about to engage in conduct, that may place the Helicopter (a craft capable of flight) in danger of removal from the State and/or jurisdiction of this Court and/or sale to an innocent purchaser.

WHEREFORE, Plaintiff, NARP, respectfully requests that the Court issue a writ of replevin or such other relief as the Court deems proper.

## **Demand for Jury Trial**

Plaintiff demands trial by jury of all issues so triable as of right by law.

SHUTTS & BOWEN, LLP
Co-Counsel for Plaintiff
250 Australian Avenue South, Suite 500
West Palm Beach, Florida 33401
Tel:   561/835-8500
Fax:   561/650-8530

By: _____
       Joseph F. McSorley, Esq.
       Florida Bar No.  564222
       Michael R. Ansay, Esq.
       Florida Bar No. 0106127

Of counsel:

E. Lawrence Barcella, Jr., Esq.
Scott M. Flicker, Esq.
Claudia Callaway, Esq.
PAUL, HASTINGS, JANOFSKY &
WALKER LLP
1299 Pennsylvania Avenue, N.W.
Tenth Floor
Washington, D.C.  20004
Tel:        (202) 508-9500
Fax:        (202) 508-9700

## VERIFICATION

NOVOSIBIRSK, RUSSIA     )

                                          )

     The undersigned, a duly authorized agent of NARP-Altai-Avia, Ltd., deposes and says that he or she has read the foregoing Verified Complaint and that the facts set forth herein are true and correct according to his or her own personal knowledge and information.  The source of this knowledge is his or her personal knowledge and the records and reports of the corporation, its employees and agents.

     I hereby declare under the penalty of perjury of the laws of the United States that the foregoing is true and correct.

     DATED this 30th  day of June, 2000.


_____

Signature


_____

Printed Name and Corporate Seal

WPBDOCS 7023237.1 MRA



**EXHIBIT** _A_

Joseph McSorley - 02.JPG



# CONTRACT № 1-BA\9-99-ПВ
## On sale of the helicopter Mi-8MTV-1

**3.09.1999**                                                          **Novosibirsk**

Aircompany "NARP - Altai - Avia" Ltd. (Novosibirsk, Russia), hereinafter referred to as "SELLER", represented by General director V.A. Berngardt, on the one hand, and «VERTOL SYSTEMS COMPANY. INC» (Tigard, OR, USA), hereinafter referred to as "BUYER", represented by Director Airborne Systems James L. Montgomerie, on the other hand, together called "PARTIES", with complete mutual understanding have concluded the present contract as follows:

### 1. SUBJECT OF THE CONTRACT

1.1. THE SELLER has sold, and the BUYER has bought 1 helicopter Mi-8MTV-1.

1.2. Simultaneously with helicopter the SELLER transfers to the BUYER all logbooks, passports for components installed on helicopter.

### 2. SPECIFICATIONS

2.1. The civilian transport helicopter Mi-8MTV-1
- Factory number 96138;
- Date of manufacturing - May 29, 1993;
- Resource from the beginning of operation - 709 flying hours.

2.2. All necessary specification specified in the Appendix 1 to the present contract.

### 3. PRICE, TOTAL SUM OF THE CONTRACT

3.1. The prices for helicopter according to the present contract are established on conditions «FCA- St. Petersburg, Russia» ("Incoterms-90").

EXHIBIT __B__

N 000001

3.2. Price of the helicopter Mi-8MTV-1 side number RA-25767 is:

**Eight Hundred and Twenty Five Thousand (825,000.00 ) United States Dollars**

3.3. The total sum of the contract is:
**Eight Hundred and Twenty Five Thousand (825,000.00 ) United States Dollars**

## 4. CONDITIONS, PLACE AND TERMS OF DELIVERY

4.1. The Seller, within 10 Days from date of receiving the first payment, will prepare the helicopter for flight-technical evaluation, and acceptance by the Buyers representative.

4.2. The Airdrome of the SELLER, coordinated as a place of acceptance-transfer of helicopter, is the Airdrome JTS (jet-test station) of "Novosibirsk aircraft repairing plant" ("NARP" Novosibirsk, Russian Federation).

4.3. The "SENDER" is JSC "Novosibirsk Aircraft Repairing Plant" (Novosibirsk, Russian Federation).

4.4. Shipment of the helicopter and delivery to the Rail Carrier will be carried out from the territory of JSC "NARP" (Novosibirsk, Russian Federation).

4.5. Within 3 days of the date of signing the acceptance statement on the helicopter, the Seller will disassemble and pack the helicopter in two special containers, load containers on rail platforms, and send them, at own account, to St. Petersburg, on address of Sea Carrier of the Buyer.

4.6   The Buyer, at own account, will transport two special containers, to the place of final destination.

4.7   The Seller within five days from the date of arrival at final destination will reassemble the helicopter, make test flight, and hand over to Buyer.

2

N 000002

## 5. MOMENT OF TRANSITION OF PROPERTY RIGHTS

5.1. The right of the property under the present contract passes from the Seller to the Buyer after recieving of the 100% of the Contract sum according to paragraph 4.3. of the present Contract.

5.2. Risks of casual loss and the damages to the helicopter passes from the Seller to the Buyer from the moment of transfer of the helicopter to the Sea-Carrier of the Buyer

## 6. TRANSFER AND ACCEPTANCE OF HELICOPTER

6.1. The acceptance of helicopter is made by the authorized representatives of the BUYER in airdrome of the SELLER, according to item 4.2 of the present contract.

6.2. The SELLER informs the BUYER in writing on readiness of helicopter for acceptance on completion of work as described in paragraph 9.6. The acceptance of helicopter, according to the present contract, should be not later than fourteen days from the date of receiving the first payment to the Sellers Account .The term of acceptance of helicopter is established by the parties within the period of no more than one (1) day.

6.3. The BUYER, within the period of no more than three (3) days after the reception of the notice according to point 6.2, informs the SELLER on the date of arrival, structure of the commission.

6.4. The charges connected with the arrival and stay of the commission are carried out by the BUYER.

6.5. Flying test of helicopter after survey on the ground and signing the acceptance  reports is carried out by the crew of the BUYER during 45 (plus / minus  15)  minutes, as the PARTIES agreed.

The members of the commission of the BUYER should be insured by the BUYER for all the time of acceptance-delivery of helicopter.

6.6. Should any defect of helicopter be discovered on the ground or during the flying test, the SELLER is obliged to remove them at his own expense within a possibly short term.

6.7. The acceptance reports are made in 4 copies:  2 – for the SELLER and 2 - for the BUYER.

3

N 000003

## 7. QUALITY AND GUARANTEE

7.1. The quality of helicopter delivered under the present contract, should correspond to the working standards and specifications of helicopter and furnishing products, and also other documents (passports, log-books, certificates which are published by factories-manufactures).

7.2. The basic specifications and flying characteristic of helicopter should correspond to the data and characteristics specified in the engineering specifications of the factory-manufacturer.

7.3. The technical resources of the fuselage, engines and other equipment should correspond to the data specified in the passports, log-books, certificates and other engineering specifications accompanying helicopter.

7.4 The Buyer guarantees normal operation of the Helicopter for 100 flight hours, or three months, from date of signing acceptance in Buyers place of final destination, but only for normal operations as described in the Manufacturers technical specifications.

7.5 The Buyer must notify the Seller during the Guarantee Period of any defects. The Seller will consider such a claim, and on acceptance of the claim will make all necessary repairs as soon as practical, but within 30 days.

## 8. ENGINEERING SPECIFICATIONS AND SERVICE

8.1. The SELLER transfers the engineering specifications in Russian, necessary for operation and service of helicopter, including Maintenance Manuel, Flight Manuel, and Major Service Manuel, to the BUYER.

8.2. The maintenance service of helicopter should be carried out by the experts of the BUYER according to the repair instruction of helicopter of Mi-8MTV-1 type.

## 9. TERMS OF PAYMENT

9.1. Within ten days from the moment of signing the present contract the BUYER transfers to the SELLER's account the sum of:

4

N 000004

**One Hundred and Fifty Thousand (150,000.00)  United States Dollars.**

9.2. Within ten days from the moment of signing the Contract the BUYER will open in the bank, specified by the SELLER, an irrevocable, indivisible Letter of Credit for the sum of:

**Two Hundred and Seventy Five (275,000.00) United States Dollars.**

9.3. An irrevocable Letter of Credit according to the point 9.2 of the present contract will be opened on granting the SELLER the following documents:

- Acceptance Reciept for helicopter in Novasibsk as described in paragraph 4.2 and illustrated in Appendix 3.

- Acceptance Receipt for delivery to Sea Carrier, signed and executed by the James L. Montgomerie in St. Petersburg,  as described in Appendix 4.

9.4. The Buyer will transfer to the Seller's account, within 60 days from the date of shipping the container from Novasibirsk, and recieving appreprate shipping documents, the remaining balance of Four Hundred Thousand United States Dollars ($400, 000.00) as described in the Contract

9.5 The Buyer will give to the Seller's Bank, the Republic National Bank of New York, a Letter of Guarantee for final payment indicted in paragraph 9.4, before delivery to St. Petersburg.

9.6 The charges for preselling work, including painting of the interior, exterior, and MR blades in Buyers colors, quantity of spare parts as listed in Appendix 2, disassembly, reassembly, and test flight in the place of final destination, are included into the cost of helicopter.
9.7. The charges for opening the Letters of Credit are carried out by the BUYER.

5

N 000005

## 10. RESPONSIBILITY OF THE "PARTIES"

10.1. Should the BUYER unreasonably refuse or evade his obligations on acceptance helicopter or payment, the SELLER has the right in the unilateral order to terminate the present contract, by notifying the SELLER in writing on his intention, and to demand from the BUYER the compensation of all losses, caused by the inadequate execution of the contract by the BUYER.

10.2. Should the SELLER unreasonably refuse or evade his obligations under the present contract, the BUYER has the right in the unilateral order to terminate the present contract, by notifying the BUYER in writing on his intention, and demand from the SELLER the compensation of all losses caused by inadequate execution of the contract by the SELLER.

10.3. Should the delivery of helicopter be not in complete volume (without furnishing products or shortage of a part of the set) the BUYER has the right to lower a purchase in proportion to the shortage or the BUYER has the right to oblige the SELLER aviation engineering in a possibly short term.

10.4. Should the SELLER delay with the delivery of helicopter, the SELLER is obliged to pay the fine of 0,1 % from the sum of cost of delivered helicopter per every day of delay, but no more than 10 % from the total cost of helicopter.

10.5. Should the BUYER delay with the transference of currency on the account of the SELLER, the BUYER is obliged to pay the fine of 0,1 % from the total sum of contract per every day of delay, but no more than 10 % of the above specified above sum.

## 11. FORCE - MAJOR

11.1. THE PARTIES are released from the responsibility for partial or complete default of the obligations under the present contract should it be the consequences, namely: fire, flood, earthquake etc, war and other military actions, as well as state or governmental orders that may arise after the conclusions of the present contract.

11.2. Both PARTIES undertake immediately to inform each other in writing on the fact of occurrence of the above-stated circumstances.

11.3. The certificates issued by the appropriate organizations and establishments of Russian Federation shall be sufficient proof of circumstances and their durability.

6

N 000006

11.4. In the above-stated cases the execution of the contract is extended for the term of action force – major circumstances.

11.5. The party which does not observe the item 11.2. of the present contract is not released from the responsibility stipulated by the present contract.

## 12. ARBITRATION

12.1. All disputes and disagreements arising from the present contract or in connection with it, are subject to consideration by negotiation between the authorized representatives of the PARTIES.

12.2. Should it be impossible to eliminate disagreements by advises and negotiations, any of the PARTIES has the right to appeal to the arbitration court with the claim of the arisen dispute.

12.3. The decision of the chosen arbitration is obligatory for the execution for both PARTIES.

## 13. OTHER CONDITIONS

13.1. The BUYER has no right to make any constructive changes in delivered helicopter within the Guarantee Period, without the authorisation of the Manufacturer

13.2. The Seller at own expense, will deliver to the Buyer six specialists including 4 ground specialists and 2 Pilots for reassembly and test flight.

13.3 All expenses for accomodation and meals for above group will be paid for by the Buyer.

13.4 All changes and additions to the present contract are valid only in case of the written approval and signing by both PARTIES.

13.5. All correspondence and the negotiation previous to the given contract, is considered null and void.

13.6. The present contract is valid from the moment of its signing and works before complete realization of the present contract and termination of all payment under it.

13.7. The present contract contains 9 pages of the printed text in English.

7

N 000007

13.8. The present contract is signed by the PARTIES in four (4) copies: 2 cope for each party in Russian and in English; all copies are equally authentic.

## 14. LEGAL ADDRESSES OF «PARTIES»

"SELLER":                    Aircompany "NARP-Altai-Air", ltd.
                             Russian Federation, Republic Altai,
                             659700, Gorno-Altaisk, Goorkina st., 29.

                             630123, Russian Federation, Novosibirsk,
                             Airport, JSC "NARP".

Beneficiary:                 Aircompany "NARP-Altai-Air", ltd.
Account :                    40702840200170005362
Beneficiary Bank:            SIBACADEMBANK
                             16, Prospect Lavrentieva
                             Novosibirsk, 630090, Russia
                             SWIFT: SIBMRU55

Intermediary Bank:           REPUBLIC NATIONAL BANK OF NEW YORK
                             452 Fifth Avenue
                             New York, NY 10018, USA
                             SWIFT: BLICUS 33
                             ABA 021004823
Account :                    608211346

"SENDER"                     JSC "Novosibirsk Aircraft Repairing Plant"
                             630123, Russian Federation, Novosibirsk,
                             Airport.

"BUYER":                     VERTOL SYSTEMS COMPANY, INC
                             PO. Box 230756, Tigard, Orgeon, 97281

                    Bank:    Wells Fargo Bank
                             Peterkort branch
                             Portland, Oregon.

8

N 000008

**15. THE SIGNATURES OF "PARTIES":**

From the SELLER:

**The General director**
**Aircompany "NARP-Altai-Air"**

From the BUYER:

**Director Airborne Systems**
**VERTOL SYSTEMS COMPANY, INC**

V.A. Berngardt

"03" 0____ 1999

J. L. Montgomerie

"___" ____ 1999

9

N 000009

The Appendix 1
To the Contract №
From "*03*" *09*_____ 1999

## Technical characteristic of the helicopter Mi-8MTV-1

| | Helicopter Mi-8MTV-1 |
|---|---|
| 1. | 2. |
| Factory number | 96138 |
| Side number | |
| Date of manufacturing | 29.05.93 |
| Resource from the beginning of exploitation (flying hours) | 709 |
| Factory number of engines | 4200051 – left<br>4200194 – right |
| Date of manefucturing of engines | 17.02.93<br>17.02.93 |
| Resource from the beginning of exploitation of engines (flying hours) | 709<br>709 |
| Factory number of VR-14 | 1303040 |
| Date of manufacturing of VR-14 | 19.03.93 |
| Resource from the beginning of exploitation of VR-14 (flying hours) | 709 |
| Factory number of APU (AI-9V) | 200087 |
| Date of manefucturing of APU (AI-9V) | 05.11.92 |
| Resource from the beginning of exploitation of APU (AI-9V):<br>hours<br>launch<br>switch off | 50<br>587<br>1097 |
| Date of manufacturing of blade cover (8AT-2710-00) | 1994 |
| Resource from the beginning of exploitation of blade cover (flying hours) | 500 |
| Factory number of small rotor | 3010080 |

10

N 000010

| 1. | 2. |
|---|---|
| Date of manufacturing of small rotor | 06.04.93 |
| Resource from the beginning of exploitation of small rotor (flying hours) | 710 |

from the SELLER:

V.A. Bergreen

from the BUYER:

L. Montgomerie

11

N 000011

The Appendix 2
To the Contract № 1-BA/9-99-ПВ
From 3.09.99

## List of Spare Parts

| № | Code | Description | Quantity |
|---|---|---|---|
| | | **Rotor blade parts** | |
| 1 | 8AT.2710.129 | Valve frame | 5 |
| 2 | 8AT.2710.134 | Inflation valve cap | 5 |
| 3 | ГОСТ 8107-75 | Slide V5-33 | 5 |
| 4 | ГОСТ 8107-75 | Screw IV8 | 5 |
| | | **Fuel system parts** | |
| 1 | 2262A-11 | Sealing ring | 2 |
| 2 | 2262A-25 | Sealing ring | 4 |
| 3 | 2262A-154 | Sealing ring | 2 |
| 4 | 2262A-169 | Sealing ring | 2 |
| 5 | 2262A-298 | Sealing ring | 2 |
| 6 | 2262A-426 | Sealing ring | 2 |
| 7 | 8455C52-2T | Gasket | 4 |
| | | **Attaching parts of engines and main gear box** | |
| 1 | 140.0800.033 | Washer | 16 |
| 2 | 140.6810.020 | Cord | 2 |
| 3 | 1-35-240-ОСТ 1 11303-73 | Bonding link | 4 |
| 4 | 15-0.5-1-ОСТ 1 10292-71 | Sealing ring | 2 |
| 5 | 15-1-1-ОСТ 1 10292-71 | Sealing ring | 2 |
| 6 | 6.3×80.0.026 ГОСТ 397-79 | Cotter pin | 32 |
| | | **Attaching parts of engines** | |
| 1. | 140.6805.003 | Gasket | 2 |
| 2 | 1-12-200-ОСТ 1 11303-73 | Bonding link | 1 |
| | | **Electrical equipment** | |
| 1 | БАНО-64 | Forward navigation light | 1 |
| 2 | Л215 или Д215А | Diode | 1 |
| 3 | Д237А | Diode | 5 |
| 4 | ИП-10 | Safety device | 1 |
| 5 | ИП-20 | Safety device | 1 |
| 6 | ИП-30 | Safety device | 1 |
| 7 | ИП-501 | Safety device | 1 |
| 8 | ИП-75М | Safety device | 1 |
| 9 | ИП-150 | Safety device | 1 |
| 10 | ПМ-2 | Safety device | 10 |
| 11 | ПМ-5 | Safety device | 10 |
| 12 | ПМ-10 | Safety device | 5 |
| 13 | ПМ-15 | Safety device | 1 |
| 14 | ПМ-20 | Safety device | 1 |
| 15 | ПМ-25 | Safety device | 1 |
| 16 | ПМ-30 | Safety device | 1 |
| 17 | ПМ-50 | Safety device | 1 |
| 18 | ПМ-100 | Safety device | 1 |
| 19 | ПМ-200 | Safety device | 1 |
| 20 | СМ-7,5-9 | Lamp | 1 |
| 21 | СМ-26-70 | Lamp | 1 |

I

| 22 | CM-28-0,05 | Lamp | 5 |
|----|-----------|------|---|
| 23 | CM-28-4.8 | Lamp | 5 |
| 24 | CM-28-5 | Lamp | 1 |
| 25 | CM-28-10 | Lamp | 4 |
| 26 | CM-28-23 | Lamp | 10 |
| 27 | CM-28-28 | Lamp | 1 |
| 28 | B.7706.020.017 | Leather whasher | 8 |
| **Consumable materials** | | | |
| 1 | 1-7-100-OCT 1 11303-73 | Bonding link | 2 |
| 2 | 1-7-120-OCT 1 11303-73 | Bonding link | 2 |
| 3 | 1-7-160-OCT 1 11303-73 | Bonding link | 2 |
| 4 | 1x12.0.026 ГОСТ 397-79 | Cotter pin | 50 |
| 5 | 1,6x20.026 ГОСТ 397-79 | Cotter pin | 100 |
| 6 | 2x25.0.026 ГОСТ 397-79 | Cotter pin | 100 |
| 7 | 2,5x20.0.026 ГОСТ 397-79 | Cotter pin | 50 |
| 8 | 2,5x32.0.026 ГОСТ 397-79 | Cotter pin | 50 |
| 9 | 3,2x40.0.026 ГОСТ 397-79 | Cotter pin | 30 |
| 10 | 4x40.0.026 ГОСТ 397-79 | Cotter pin | 28 |
| 11 | ГОСТ 19034-82 | Polyvinylchloride pipe d=30 | 0.2 |
| 12 | TУ-38-105396-85 | Thiokol tape | 0.2 |
| 13 | KC-0.5 ГОСТ 792-67 | Cadmium plated wire | 0.5кг |
| 14 | KC-0.8 ГОСТ 792-67 | Cadmium plated wire | 0.5кг |
| 15 | KC-1,0 ГОСТ 792-67 | Cadmium plated wire | 0.3кг |
| 16 | KC-1.2 ГОСТ 792-67 | Cadmium plated wire | 0.3кг |
| **Airborne tools 8MT.9100.000** | | | |
| 1 | 8AT.9101.400 | Case with panels 8MT.9100.010, 8MT.9100.020 | 1 |
| **Ground-operating equipment and fixtures** | | | |
| 1 | 140.9111.000 | Engine inlet blank | 2 |
| 2 | 140.9115.000 | Plug on gas generator manifold | 2 |
| 3 | 140.9923.100 | Device for oil collection | 1 |
| 4 | 140.9924.000 | Tray | 1 |
| 5 | 140.9928.05 | Hose for oil draining from oil system | 1 |
| 6 | 140.9948.00 | Blank on АИ-9B air intake | 1 |
| 7 | 348.069 | Injector for assembly flushing | 1 |
| 8 | 8.0029.680 | Fixture for rotor blade covering | 1 |
| 9 | 8.9126.000 | Wheel chock | 4 |
| 10 | 8.9905.00 | Ladder for entrance into tail boom | 1 |
| 11 | 8A.9901.00 | Overflow hose | 1 |
| 12 | 8A.9910.000 | Hoses for filling and checking pressure in wheels, airborne electrical system, shock struts and hydraulic accumulators | 1 |
| 13 | 8A.9917.00 | Retractable air steps with base (2 pcs) | 1 |
| 14 | 8AT.7220.030 | Flare pistol plug | 1 |

N 000013

| 15 | 8AT.9129.000 | Lubrication fitting for filling intermediate gear box and tail rotor gear box and cavities of main rotor hub feathering hinge with oil | 1 |
|----|--------------|---|---|
| 16 | 8AT.9917.500 | Compressed injector | 1 |
| 17 | 8AT.9918.000 | Hose for oil draining from gear box | 2 |
| 18 | 8A.9928.500 | Hose for oil draining from oil system | 1 |
| 19 | 8MT.9110.00 | Inlet fan blank | 1 |
|    |              | Plug on piping of compressor air bleed | 1 |
| 20 | 8MT.9136.000 |  |  |
|    |              | Plug on exhaust pipe of АИ-9 assembly | 1 |
| 21 | 8AMT.9137.000 |  |  |
|    |              | Plug on exhaust of engine | 2 |
| 22 | 140.9109.000 | Funnel for oil | 1 |
| 23 | 4638A-1 | Funnel 8AT.9904.100 | 1 |
| 24 | 4639A-1 |  |  |
|    |         | Funnel for fuel | 1 |
| 25 | 4639A-2 | Compressed injector with clanges according | 2 |
| 26 | Ш-1 | to B.9917.100 drowing |  |
| 27 | 8AT-9800-00 | Tow bar | 1 |

| | | **Tools for servicing of engine  ТВ3-117** | |
|---|---|---|---|
| 1 | 002-009 | Air board tools for engine "78" | 1 |

| | | Set of covers | |
|---|---|---|---|
| 1 | 8MT-9113-00 | Set of covers | 1 |
| | | **Service equipment for transportation** | |
| 1 | 8AT-9903-00 | Sling for rotor blade lifting | 1 |
| 2 | 8AT-9936-00 | Sling for lifting of the tail boom and tail boom pylon in assembly | 1 |
| 3 | 8AT-9925-00 | Sling for tail airscrew lifting | 1 |
| 4 | 8AT-9943-00 | Sling for main gear box lifting | 1 |
| 5 | 56-9907-00 | Sling for tail rotor gear box lifting | 1 |
| 6 | 140-9908-00 | Hoist sling for the engine lifting | 1 |
| 7 | 8AT-9114-00 | Torque wrench up to 300 KGM | 1 |
| 8 | 8AT-9103-10 | Torque wrench up to 135 KGM | 1 |
| 9 | K.02.343.00.00.00 | Support for engines | 1 |
| 10 | K.03.344.00.00.00 | Support for main gear box | 1 |

**from the SELLER:**                    **from the BUYER:**

_____ **V.A. Berngardt**        _____ **L. Montgomerie**

STATE OF OREGON CORPORATION USA
Common Seal of
VERTOL SYSTEMS COMPANY INC.
REGISTRY NO: 500603-84

3

N 000014

## ADDITIONAL AGREEMENT № 1-ВА/9-99-ПВ-ДС
### to the Contract № 1-ВА/9-99-ПВ from 3.09.99г.

4.09.1999                                                        Novosibirsk

Aircompany "NARP - Altai - Avia" Ltd. (Novosibirsk, Russia), hereinafter referred to as "SELLER", represented by General director V.A. Berngardt, on the one hand, and «VERTOL SYSTEMS COMPANY. INC» (Tigard, OR, USA), hereinafter referred to as "BUYER", represented by Director Airborne Systems James L. Montgomerie, on the other hand, together called "PARTIES", with complete mutual understanding have concluded the present Additional Agreement as follows:

1. SELLER and BUYER add a new paragraph 8.3 at the item 8 «ENGINEERING SPECIFICATIONS AND SERVICE» and write it as follow:

**«...8.3. BUYER marks side number of his country on the helicopter Mi-8MTV-1 (factory number 96138) and has to provide flying safety and control of helicopter flying fitness according documents which regulate exploitation and service helicopters of this type ...»**

2. The present Additional Agreement is integral part of the Contract № 1-ВА/9-99-ПВ from 3.09.99, and it is singed in four copies: 2 copies for each PARTY in Russian and in English; all copies are equally authentic.

3. The present Additional Agreement is signed:

From the SELLER:                           From the BUYER:

The General director                        Director Airborne Systems
Aircompany "NARP-Altai-Air"                 VERTOL SYSTEMS COMPANY, INC

_____ V.A. Berngardt                _____ D.L. Montgomerie

«___»_____ 1999                             «21»_____ 1999

**EXHIBIT ___C___**

N 000015

## ADDITIONAL AGREEMENT № 2-ВА/9-99-ПВ-ДС
### to the  Contract № 1-ВА/9-99-ПВ from 3.09.99г.

**22.09.1999**                                                                 **Novosibirsk**

Aircompany "NARP - Altai - Avia" Ltd. (Novosibirsk, Russia), hereinafter referred to as "SELLER", represented by General director V.A. Berngardt, on the one hand, and «VERTOL SYSTEMS COMPANY. INC» (Tigard, OR, USA),  hereinafter referred to as "BUYER", represented by Director Airborne Systems James L. Montgomerie, on the other hand, together called "PARTIES", with complete mutual understanding have concluded the present Additional Agreement as follows:

1. SELLER and BUYER change paragraph 9.2 at the item 9 «TERMS OF PAYMENT» and write it as follow:

**«...9.2. Within fifteen days from the moment of signing the present Additional Agreement the BUYER transfers to the SELLER's account the sum of: Two Hundred and Seventy-Five Thousand (275,000.00)  United States Dollars...»**

2. SELLER and BUYER change paragraph 9.3 at the item 9 «TERMS OF PAYMENT» and write it as follow:

**«...9.3. The SELLER commissions the company «M&M» to expedite the cargo from Novosibirsk to St. Petersburg ...»**

3. The present Additional Agreement is integral part of the Contract № 1-ВА/9-99-ПВ from 3.09.99,  and it is singed in four copies: 2 copies for each PARTY in Russian and in English; all copies are equally authentic.

4. The present Additional Agreement is signed:


**From the  SELLER:**                                   **From the BUYER:**

**The General director**                                **Director Airborne Systems**
**Aircompany "NARP-Altai-Air"**                        **VERTOL SYSTEMS COMPANY, INC**


_____ V.A. Berngardt                        _____ .L. Montgomerie

« 22 » 09 _____ 1999                                 « 24th Sept » 1999

N 000016

## ADDITIONAL AGREEMENT № 3-ВА/9-99-ПВ-ДС
### to the Contract № 1-ВА/9-99-ПВ from 3.09.99г.

25.09.1999                                                              Novosibirsk

Aircompany "NARP - Altai - Avia" Ltd. (Novosibirsk, Russia), hereinafter referred to as "SELLER", represented by General director V.A. Berngardt, on the one hand, and «VERTOL SYSTEMS COMPANY. INC» (Tigard, OR, USA), hereinafter referred to as "BUYER", represented by Director Airborne Systems James L. Montgomerie, on the other hand, together called "PARTIES", with complete mutual understanding have concluded the present Additional Agreement as follows:

1. SELLER and BUYER change paragraph 9.4 at the item 9 «TERMS OF PAYMENT» and write it as follow:

**«...9.4. The Buyer will transfer to the Seller's account, within 3 days from the date of the beginning of reassembling work by the Seller's specialists, the remaining balance of Four Hundred Thousand United States Dollars ($400, 000.00) as described in the Contract, but not late than within 60 days from the date of shipping the container from Novosibirsk ...»**

2. SELLER and BUYER change paragraph 9.5 at the item 9 «TERMS OF PAYMENT» and write it as follow:

**«...9.5. The Seller will pass to Buyer the helicopter's Export Certificate immediately after transferring the remaining balance of Four Hundred Thousand United States Dollars ($400, 000.00) as described in the Contract...»**

3. The present Additional Agreement is integral part of the Contract № 1-ВА/9-99-ПВ from 3.09.99, and it is singed in four copies: 2 copies for each PARTY in Russian and in English; all copies are equally authentic.

4. The present Additional Agreement is signed:

From the SELLER:                              From the BUYER:

The General director                          Director Airborne Systems
Aircompany "NARP-Altai Air"                   VERTOL SYSTEMS COMPANY, INC

_____ V.A. Berngardt               _____ D.L. Montgomerie

«25» 09 1999                                  «25» SEP 1999

N 000017

**ADDITIONAL AGREEMENT № 3-ВА/9-99-ПВ-ДС**
to the Contract № 1-ВА/9-99-ПВ from 3.09.99г.

24.09.1999                                                    Novosibirsk

Aircompany "NARP - Altai - Avia" Ltd. (Novosibirsk, Russia), hereinafter referred to as "SELLER", represented by General director V.A. Berngardt, on the one hand, and «VERTOL SYSTEMS COMPANY. INC», (Tigard, OR, USA), hereinafter referred to as "BUYER", represented by Director Airborne Systems James L. Montgomerie, on the other hand, together called "PARTIES", with complete mutual understanding have concluded the present Additional Agreement as follows:

1. SELLER and BUYER change paragraph 13.2 at the item 13 «OTHER CONDITIONS» and write it as follow:

**«...13.2. The Seller at expense of the Buyer, will deliver to the Buyer ten specialists including 6 ground specialists and 4 Pilots for reassembly and test flight....»**

2. SELLER and BUYER change paragraph 13.3 at the item 13 «OTHER CONDITIONS» and write it as follow:

**«...13.3. All expenses for aeroplane tickets «Frankfurt – Orlando» and back, accomodation and meals for above group will be paid for by the Buyer...»**

3. SELLER and BUYER add new paragraph 13.9 at the item 13 «OTHER CONDITIONS» and write it as follow:

**«...13.9. When the team of specialists will arrive at the place of destination, the Buyer will pay One Thousand (1,000.00) United States Dollars for every specialist...»**

4. SELLER and BUYER change column «Date of manufacturing of blade cover (8AT-2710-00)» at the Appendix 1 and write it as follow:

| Date of manufacturing of blade cover (8AT-2710-00) | 1998 (new) |
|---|---|

N 000018

5. The present Additional Agreement contents 2 pages and it is integral part of the Contract   № 1-ВА/9-99-ПВ from 3.09.99.

6. The present Additional Agreement is singed in four copies: 2 copies for each PARTY in Russian and in English; all copies are equally authentic.

4. The present Additional Agreement is signed:


**From the SELLER:**                              **From the BUYER:**

**The General director**                          **Director Airborne Systems**
**Aircompany "NARP-Altai-Air"**                   **VERTOL SYSTEMS COMPANY, INC**


_____ **V.A. Berngardt**       _____ **D.L. Montgomerie**

« __ »___ __ **1999**                     « __ »___ ___ **1999**

## ADDITIONAL AGREEMENT № 4-ВА/9-99-ПВ-ДС
### to the Contract № 1-ВА/9-99-ПВ from 3.09.99г.

**25.09.1999**                                                    **Novosibirsk**

Aircompany "NARP - Altai - Avia" Ltd. (Novosibirsk, Russia), hereinafter referred to as "SELLER", represented by General director V.A. Berngardt, on the one hand, and «VERTOL SYSTEMS COMPANY. INC» (Tigard, OR, USA),   hereinafter referred to as "BUYER", represented by Director Airborne Systems James L. Montgomerie, on the other hand, together called "PARTIES", with complete mutual understanding have concluded the present Additional Agreement as follows:

1. SELLER and BUYER change paragraph 9.4 at the item 9 «TERMS OF PAYMENT» and write it as follow:

«...9.4. **The Buyer will transfer to the Seller's account, within 3 days from the date of the beginning of reassembling work by the Seller's specialists, the remaining balance of Four Hundred Thousand United States Dollars ($400, 000.00) as described in the Contract, but not late than within 60 days from the date of shipping the container from Novosibirsk ...»**

2. SELLER and BUYER change paragraph 9 5 at the item 9 «TERMS OF PAYMENT» and write it as follow:

«...9.5. **The Seller will pass to Buyer the helicopter's Export Certificate immediately after transferring the remaining balance of Four Hundred Thousand United States Dollars ($400, 000.00) as described in the Contract...»**

3. The present Additional Agreement is integral part of the Contract № 1-ВА/9-99-ПВ from 3.09.99, and it is singed in four copies: 2 copies for each PARTY in Russian and in English; all copies are equally authentic.

4. The present Additional Agreement is signed:

**From the SELLER:**                              **From the BUYER:**

The General director                              Director Airborne Systems
Aircompany "NARP-Altai-Air"                      VERTOL SYSTEMS COMPANY, INC
                                                 Common Seal
_____ V.A. Berngardt             D.L. Montgomerie
                                                 VERTOL SYSTEMS
_____ 1999                          «25 » Sep 1999 COMPANY INC.

N 000020

Oct 06 99 06:     ·     James Montgomerie          VSC1              p. 2

10-06-1999 7 57AM   FROM:

FROM : NARP(ALTAI)AIR          PHONE NO. : 3832280198        Oct. 06 1999 06:25PM P2
                                                                                    P 3

## ADDITIONAL AGREEMENT № 3/1-ВА/9-99-ПВ-ДС
### to the Contract № 1-ВА/9-99-ПВ from 3.09.99г.

6.10.1999                                                    Novosibirsk

Aircompany "NARP - Altai - Avia" Ltd. (Novosibirsk, Russia), hereinafter referred to as "SELLER", represented by General director V.A. Berngardt, on the one hand, and «VERTOL SYSTEMS COMPANY, INC» (Tigard, OR, USA), hereinafter referred to as "BUYER", represented by Director Airborne Systems James L. Montgomerie, on the other hand, together called "PARTIES", with complete mutual understanding have concluded the present Additional Agreement as follows:

1. SELLER and BUYER change paragraph 1 at the Additional Agreement № 2-ВА/9-99-ПВ-ДС from 22.09.99 and write it as follow:

«...9.2. The BUYER transfers to the SELLER's account the sum of: Two Hundred and Seventy-Five Thousand (275,000.00) United States Dollars in the following way:

•    Within fifteen days from the moment of signing the present Additional Agreement the BUYER transfers to the SELLER's account the sum of: One Hundred Thousand (100,000.00) United States Dollars;
•    Within two days from the date of loading the container on rail platform and after «M & M» confirmation that they have the container with helicopter loaded on the train the BUYER transfers to the SELLER's account the sum of: One Hundred and Seventy-Five Thousand (175,000.00) United States Dollars ...»

 The present Additional Agreement is integral part of the Contract

STATE OF OREGON CORPORATION USA
CORPORATION SEAL
OF
VERTOL SYSTEMS
COMPANY
INC.
REGISTRY NO: 500603-84

N 000021

Oct 06 99 0E    P    James Montgomerie    VSC1    P

10-06-1999 7.53AM    FROM

FROM : NARP(ALTAI)AIR        PHONE NO. : 3832288198        Oct. 06 1999 06:27PM P4

## ADDITIONAL AGREEMENT № 4-ВА/9-99-ПВ-ДС
### to the Contract № 1-ВА/9-99-ПВ from 3.09.99г.

14.10.1999                                    Novosibirsk

Aircompany "NARP – Altai – Avia" Ltd. (Novosibirsk, Russia), hereinafter referred to as "SELLER", represented by General director V.A. Berngardt, on the one hand, and «VERTOL SYSTEMS COMPANY. INC» (Tigard, OR, USA), hereinafter referred to as "BUYER", represented by Director Airborne Systems James L. Montgomerie, on the other hand, together called "PARTIES", with complete mutual understanding have concluded the present Additional Agreement as follows:

1. SELLER and BUYER change paragraph 1 at the Additional Agreement № 3-ВА/9-99-ПВ-ДС from 25.09.99 and write it as follow:

«...9.4. Within fifteeng. days from the date of loading the container on rail platform the BUYER will open in the bank, specified by the SELLER, an irrevocable, indivisible Letter of Credit for the sum of:

For Hundred Thousand (400,000.00) United States Dollars

4.1.1. An irrevocable Letter of Credit will be opened on granting the SELLER the following documents:

* Bill of ladingS
* Acceptance Reciept for helicopter signed in the BUYER's country.

2. The present Additional Agreement is integral part of the Contract № 1-ВА/9-99-ПВ from 3.09-99, and it is singed in four copies: 2 copies for each PARTY in Russian and in English; all copies are equally authentic.
3. The present Additional Agreement is signed:

From the SELLER:                      From the BUYER:

The General director                  Director Airborne Systems
Aircompany "NARP-Altai-Air"           VERTOL SYSTEMS COMPANY, INC

V.A. Berngardt                        J. Montgomerie

1999                                  « 6 » OCT 1999

LAW OFFICES OF

# PAUL, HASTINGS, JANOFSKY & WALKER LLP

A LIMITED LIABILITY PARTNERSHIP INCLUDING PROFESSIONAL CORPORATIONS

600 PEACHTREE ST., N.E., STE. 2400
ATLANTA, GEORGIA 30308-2222
TELEPHONE (404) 815-2400

695 TOWN CENTER DRIVE
COSTA MESA, CALIFORNIA 92626-1924
TELEPHONE (714) 668-6200

TOWER 42
25 OLD BROAD STREET
LONDON EC2N 1HQ
TELEPHONE 44 (171) 982-4000

695 SOUTH FLOWER STREET
LOS ANGELES, CALIFORNIA 90071-2371
TELEPHONE (213) 683-6000

1299 PENNSYLVANIA AVENUE, N.W.

WASHINGTON, D.C. 20004-2400

TELEPHONE (202) 508-9500

FACSIMILE (202) 508-9700

INTERNET www.phjw.com

ROBERT P. HASTINGS (1910-1996)
COUNSEL
LEE G. PAUL
LEONARD S. JANOFSKY
CHARLES M. WALKER

300 PARK AVENUE
NEW YORK, NEW YORK 10022-4697
TELEPHONE (212) 318-6000

345 CALIFORNIA STREET
SAN FRANCISCO, CALIFORNIA 94104-2635
TELEPHONE (415) 835-1600

1055 WASHINGTON BOULEVARD
STAMFORD, CONNECTICUT 06901-2217
TELEPHONE (203) 961-7400

ARK MORI BUILDING
12-32, AKASAKA 1-CHOME
MINATO-KU, TOKYO 107, JAPAN
TELEPHONE (03) 3586-4711

June 28, 2000

WRITER'S DIRECT ACCESS
(202)508-9525
elbarcella@phjw.com

OUR FILE NO.

<u>VIA FACSIMILE AND U.S. MAIL</u>

James Montgomerie
President
Vertol Systems Company, Inc.
6665 West Burnside #428
Portland, Oregon 97210

    Re:   <u>Civilian Transport Helicopter Mi-8MTV-1, Serial No. 96138</u>

Dear Mr. Montgomerie:

    This Firm has been retained by NARP-Altai-Air Limited of Novosibirsk, Russia ("NARP") regarding the violation by Vertol Systems Company, Inc. ("Vertol") of Contract No. 1-BA/9-99-PB (the "Contract") for the sale of a civilian transport helicopter, model Mi-8MTV-1, serial no. 96138 (the "Helicopter"). We are writing to provide Vertol, and you individually, with an opportunity to avoid litigation to resolve this matter.

    The price of the Helicopter under Paragraphs 3.2 and 3.3 of the Contract is $825,000.00. Vertol has paid only $425,000.00, and the payment of that amount was made late.

    Vertol's conduct and delays in performance have caused substantial damage to our client. Our client's legal position under the terms of the Contract, and of the Additional Agreements signed by Vertol and NARP, is strengthened both by Vertol's course of conduct, and by the record of correspondence between Vertol and NARP. We provide the following summary to inform you of the claims which NARP has authorized us to assert against you unless you take immediate action to remedy this situation:

EXHIBIT  D

PAUL, HASTINGS, JANOFSKY & WALKER LLP

James Montgomerie
Vertol Systems Company, Inc.
June 28, 2000
Page 2

- Under Paragraph 9.4, as amended by Additional Agreement No. 4 to the Contract, Vertol "will transfer to the Seller's account, within 3 days from the date of the beginning of reassembling work by the Seller's specialists, the remaining balance of Four Hundred Thousand United States Dollars ($400,000.00) as described in the contract, but not late[r] than within 60 days from the date of shipping the container from Novosibirsk." (Emphasis added.)

- The Helicopter was transported from Novosibirsk on or about October 13, 1999, departed on ship from St. Petersburg, Russia on or about April 26, 2000, and arrived in Melbourne, Florida on or about May 15, 2000. Notwithstanding that more than 60 days has transpired since the Helicopter was shipped to Vertol, and notwithstanding that Vertol has taken possession of the Helicopter, Vertol has not paid the $400,000.00 due and has refused to authorize such payment to NARP under Letter of Credit No. 723-01-0000185-S issued by First Security Bank (the "Letter of Credit").

- Pursuant to Paragraph 5.1 of the Contract, the Helicopter remains the property of NARP until it receives the full Contract amount of $825,000.00. According to Paragraph 5.2 of the Contract, Vertol bore all risks of loss and damage to the Helicopter from the moment the Helicopter was transferred to the sea carrier in St. Petersburg, Russia in April of 1999.

- After the Helicopter arrived in Melbourne, Vertol performed unauthorized reassembly work on it, despite NARP's objection and repeated warnings that such reassembly would impede the aircraft's safety.

- Under Paragraph 13.1 of the Contract, Vertol has no right to make any changes to the Helicopter within the 100 flight hour guarantee period without NARP's authorization.

- Any assembly, use or transfer of the Helicopter, without NARP's prior written consent, constitutes tortuous interference with and conversion of its property. NARP intends to hold Vertol fully liable for all damage that has occurred to the Helicopter as a result of Vertol's wrongful handling and reassembly.

- Moreover, by unilaterally engaging in the unauthorized reassembly of the Helicopter – despite NARP's objections and its repeated statements to Vertol that it was ready, willing and able to send its authorized technicians to Melbourne to conduct a proper reassembly – Vertol waived all provisions of the Contract regarding reassembly and test flight of the Helicopter, including those set forth in

PAUL, HASTINGS, JANOFSKY & WALKER LLP

James Montgomerie
Vertol Systems Company, Inc.
June 28, 2000
Page 3

Paragraph 4.7. Vertol's actions to block payment under the Letter of Credit on the basis of these reassembly and test flight provisions, when Vertol itself prevented our client from performing a proper reassembly and test flight, constitute a tortious breach of the covenant of good faith and fair dealing, if not outright fraud. Such conduct may entitle NARP to assert claims for punitive damages against Vertol and against you personally.

- Among the egregious of Vertol's Contract violations is its insertion, in the March 20, 2000 Irrevocable Letter of Credit, of a presentment requirement of a "Certificate of *Delivery and Reassembly*", rather than an "Acceptance Receipt for helicopter signed in Buyer's country" as specified in Paragraph 9.4, modified by Additional Agreement No. 4 to the Contract. This action exposes both Vertol, and you individually, to liability for fraud.

The actions described above do not even begin to catalog the serial breaches and delays by Vertol prior to shipment of the Helicopter. In hindsight, it appears that Vertol engaged in a deliberate scheme to fraudulently obtain physical possession of the Helicopter, by making false assurances to NARP of compliance with the Contract, while intending all along to avoid its payment obligations under the Contract. This conduct, too, exposes Vertol and you personally to a substantial risk of punitive damages should this matter proceed to litigation.

We understand that yesterday NARP asked Vertol to instruct First Security Bank to extend the Letter of Credit, which currently is set to expire on June 30, 2000. Vertol did not respond. I will call you now to discuss this matter and to request your agreement and cooperation to extend the Letter of Credit for 60 days, in order to permit us time to resolve this matter short of litigation. Specifically, if you agree to such an extension, we are willing to consider a 60 day mutual "standstill" period during which neither side sues the other on the Contract and we attempt to settle the dispute.

If Vertol will not agree to extend the Letter of Credit, we intend to take all necessary steps, including judicial action on both the Contract and the Letter of Credit, to preserve that security in favor of NARP. We will also contact First Security Bank regarding Vertol's financing arrangements and in order to secure the Letter of Credit. We strongly urge Vertol to consent to an extension of the Letter of Credit to avoid further damage to our client.

PAUL, HASTINGS, JANOFSKY & WALKER LLP

James Montgomerie
Vertol Systems Company, Inc.
June 28, 2000
Page 4

I look forward to speaking to you regarding this matter.

Sincerely,

E. Lawrence Barcella, Jr.
of PAUL, HASTINGS, JANOFSKY & WALKER LLP

cc:     Scott M. Flicker, Esq.
        Claudia T. Callaway, Esq.